ACCEPTED
05-18-01160-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
11/26/2018 12:59 PM
LISA MATZ
CLERK

**No. 05-18-01160-CV**

_____

**IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICT OF TEXAS
AT DALLAS**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
11/26/2018 12:59:28 PM
LISA MATZ
Clerk

_____

*Richard Gehrke and Pacific Companies, Inc.*

**Appellants**

**v.**

*Merritt Hawkins and Associates, LLC*

**Appellee**

_____

**APPELLEE'S EMERGENCY MOTION TO ENFORCE**

_____

Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@winston.com
John C.C. Sanders Jr.
State Bar No. 24057036
jsanders@winston.com
Hayden L. Duffy
Texas Bar No. 24097975
hduffy@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl St.
9th Floor
Dallas, Texas 75201
Telephone: (214) 453-6500
Telecopy: (214) 453-6400

**ATTORNEYS FOR APPELLEE**

**APPELLEE's EMERGENCY MOTION TO ENFORCE**

**To the Honorable Court of Appeals:**

Pursuant to Texas Rule of Appellate Procedure 29.4, Appellee Merritt Hawkins and Associates, LLC ("Appellee" or "Merritt Hawkins") files this Emergency Motion for Relief, and respectfully shows this Honorable Court as follows:

## I.     INTRODUCTION

1.     In the trial court, Merritt Hawkins secured a temporary injunction against its departed employee, Richard Gehrke ("Gehrke") that prohibited him from undertaking certain competitive activities pursuant to a non-competition agreement he had previously entered into with the company. Right before the trial court issued its temporary injunction, Gehrke filed a frivolous motion to dismiss under the Texas Anti-SLAPP statute, which immediately stayed discovery and prevented Merritt Hawkins from monitoring Gehrke's compliance with the temporary injunction. Despite Gehrke's attempts to avoid monitoring, Merritt Hawkins has discovered evidence demonstrating that Gehrke (1) is soliciting clients that he is barred from soliciting pursuant to the trial court's order; and (2) is working within territories that he is enjoined from working within on behalf of a competitor. The trial court's temporary injunction is clear that such actions are prohibited. Accordingly, Gehrke stands in contempt of the trial court's temporary injunction order.

2.     Merritt Hawkins files this motion requesting the Court initiate an enforcement proceeding under Rule 29.4 of the Texas Rules of Appellate Procedure, and refer the proceeding to the trial court with instructions to hold a hearing as soon as practicable, whereupon Gehrke may show cause as to why he should not be held in contempt for violating the temporary injunction

## II.     BACKGROUND

3.     This is a non-compete and trade secret misappropriation case.  Gehrke was an executive in Merritt Hawkins' sales and marketing department.  *See* Exhibit 1, ⁋ 18.  Within his position as an executive, Gehrke was given access to Merritt Hawkins' pricing and marketing strategies, costs, customer lists, and other internal information used to compete for business.  *Id.* ⁋ 7.

4.     As a condition of his employment, Merritt Hawkins required Gehrke to enter into a confidentiality agreement that prohibited Gehrke from, among other restrictions, doing the following: (1) using Merritt Hawkins' confidential information for the benefit of a competitor or himself; (2) for eighteen months, working in any of the geographic territories that he was directly or indirectly responsible for during the last twelve months of his employment with Merritt Hawkins; and (3) for eighteen months, soliciting customers that he directly or indirectly serviced during the last twelve months of his employment with Merritt Hawkins.  *Id.* ⁋⁋ 8-14.

5. The trial court enjoined Gehrke from soliciting clients that he worked with during the last twelve months of his employment, and a preliminary list of such customers was submitted to the trial court for purposes of compliance and enforcement (the "Prohibited Customer List"). *See* Exhibit 1 § II(1). However, instead of enjoining Gehrke within the full prohibited territory provided by Gehrke's agreement with Merritt Hawkins, the trial court enjoined Gehrke from working within ten miles of the location of each customer on the Prohibited Customer List. *See* Exhibit 1 § II(2).

6. On August 16, 2018, September 12, 2018, and September 13, 2018, the hearing on Merritt Hawkins' Application for Temporary Injunction was conducted before the trial court.

7. On September 21, 2018, Gehrke and Pacific Companies, Inc. ("Pacific") filed a motion to dismiss under the Texas Citizens Participation Act. The filing of the motion to dismiss automatically stayed discovery. *See* Tex. Civ. Prac. & Rem. Code § 27.003(c).

8. On September 25, 2018, the Court issued a temporary injunction order, that, among other things, prevented Gehrke from: (1) soliciting customers on a list provided to the trial court and Gehrke; and (2) soliciting customers for permanent healthcare placements and staffing services within a ten-mile radius of customers on the customer list (the "TI Order"). *See* Exhibit 1 § II.

3

## III.   ARGUMENT

### A. Gehrke is violating the trial court's temporary injunction.

9.     The TI Order places certain restrictions on Gehrke's competitive activities.  Specifically, the TI Order provides that Gehrke is enjoined from engaging in the following acts:

> Until January 24, 2020, soliciting, either directly or in concert with anyone else, any actual or perspective client, customer, or candidate for placement of Merritt Hawkins with whom Gehrke dealt during the 12 months prior to his separation from Merritt Hawkins; *provided however*, for purposes of the scope of the restrictions in this paragraph, the Court has a customer list it is holding *in camera* and has provided to counsel of record for the parties in this matter which shall define those customers and prospects which are the subject of the prohibitions contained in this paragraph;

*See* Exhibit 1 § II(1).

10.     The TI Order also prohibits Gehrke from doing the following:

> Until January 24, 2020, directly or indirectly, performing any services of the same, similar, or greater nature to those performed by Gehrke during his employment at Merritt Hawkins for a competitor of Merritt Hawkins in the states of Colorado, Kansas, Nebraska, Oklahoma, and southern California, and within a ten (10) mile radius of the customers and prospects set forth on the customer list referenced in the preceding paragraph. For purposes of clarity, the services that Gehrke may not perform pursuant to this paragraph include recruiting or providing permanent healthcare placements or staffing services to healthcare facilities or organizations;

*See* Exhibit 1 § II(2).

    i.     *Gehrke violated the TI Order by knowingly attending conferences that had prohibited customers in attendance.*

4

11. The declaration of Travis Singleton, attached hereto as Exhibit 2 (the "Singleton Declaration"), and the evidence that is included with the declaration, demonstrates that Gehrke violated the TI Order because Gehrke directly and indirectly solicited prohibited customers.

12. Specifically, Gehrke posted pictures on LinkedIn of himself attending three different conferences that were also attended by a number of clients on the Prohibited Customer List. *See* Exhibit 2 ‖‖ 5, 10, 17.

13. For example, Gehrke attended the Missouri Primary Care Association Conference (the "MPCA Conference") which had fifteen customers from the Prohibited Customer List in attendance. *Id.* ‖ 9.

14. Gehrke also posted a picture of himself at the Missouri Hospital Association's Annual Conference (the "MHA Conference") which had fifteen customers from the Prohibited Customer List in attendance. *Id.* ‖ 15.

15. Gehrke also went to the Illinois Staff Physician Recruiters Conference (the "ISPR Conference") which had two customers from the Prohibited Customer List in attendance. *Id.* ‖ 22.

16. Gehrke's pictures show him working as a sales representative on Pacific's behalf at each of the above-named conferences. *Id.* ‖‖ 5, 10, 17.

17. These conferences are held to educate healthcare providers, healthcare professionals, and in-house recruiters within health systems, hospitals, and physician

5

organizations. *Id.* ¶¶ 7, 12, 19. In order to help pay for the costs associated with these conferences, conference organizers allow vendors, such as medical staffing companies, to pay a fee in exchange for the opportunity to operate a booth at the conference. *Id.* At these booths, vendors solicit conference attendees. *Id.*

18. Gehrke did not attend these conferences as an attendee, but as an employee of Pacific, a vendor. *Id.* Gehrke attended these conferences solely to advertise Pacific's services. *Id.*

19. Indeed, it would have been difficult for Gehrke to avoid clients on the Prohibited Customer List at these conferences, because these events require attendees to interact with vendors such as Pacific. *Id.* ¶ 27.

20. Gehrke specifically chose to attend these regional conferences, even though he knew that customers that he is restrained from contacting were likely to be in attendance. *Id.* ¶ 28.

21. The TI Order is clear that Gehrke may not solicit customers on the Prohibited Customer List for any type of physician recruitment activity, whether it is for locum tenens or permanent physician placement. Exhibit 1 § II(1). Accordingly, Gehrke cannot escape responsibility for his attendance at these conferences by claiming that he was only soliciting clients for Pacific's locum tenens services.

22. Indeed, even if Gehrke did try to use such an excuse, it is clearly reputed

by the fact that Gehrke worked in front of a large Pacific sign that explicitly advertises Pacific's permanent physician staffing services. *See* Exhibit 2, attachments A-C.

23. At best, Gehrke's attendance at the conference and manning a booth that prominently advertises physician staffing services qualify as indirect solicitations, which he is barred from doing under the TI Order. *See* Exhibit 1, § II(1). For the foregoing reasons, Gehrke's attendance as a vendor representative at the MPCA Conference, the MHA Conference, and the ISPR Conference (collectively, the "Conferences") demonstrates his violation of the TI Order.

    ii. *Gehrke violated the TI Order by offering permanent healthcare staffing and placement services at two conferences within ten miles of customers on the Prohibited Customer List.*

24. As explained above, the TI Order prohibits Gehrke from offering permanent physician placement and staffing services within ten miles of a customer on the Prohibited Customer List (the "Prohibited Geography"). Gehrke violated the trial court's injunction by soliciting clients within the Prohibited Geography.

25. The MHA Conference that Gehrke attended was within ten miles of the location of one customer on the Prohibited Customer List, and the ISPR Conference occurred within ten miles of four such prohibited customers. *See* Exhibit 2 ¶¶ 16, 23-26

26. Gehrke's photos show him working as Pacific's representative, in front

7

of a large sign soliciting conference attendees to utilize Pacific's permanent and locum tenens services. *Id.*, attachments A-C. The sign unmistakably demonstrates that Gehrke was not merely soliciting clients for locum tenens services at the Conferences, but also permanent staffing services. *Id.*

27. Gehrke violated the TI Order by soliciting clients for permanent staffing services within the Prohibited Geography while attending the MHA Conference and the ISPR Conference.

iii. *Gehrke violated the TI Order by offering permanent healthcare staffing and placement services for a facility within ten miles of customers on the Prohibited Customer List.*

28. Through an online posting, Gehrke further violated the TI Order by offering permanent physician placement and staffing services within the Prohibited Geography.

29. Gehrke posted an advertisement on LinkedIn for a permanent gastroenterologist position at a hospital fifteen minutes outside of St. Louis. *Id.* ¶ 29.

30. This placement is within the Prohibited Geography. *Id.*

31. For the foregoing reasons, it is clear that Gehrke's LinkedIn post advertising a gastroenterologist position located within 15 minutes of St. Louis violated the TI Order. Furthermore, as described above, Gehrke's attendance at the Conferences also violated the trial court's temporary injunction. Accordingly,

8

Gehrke has repeatedly violated the TI Order, and must be held accountable for his actions.

## B. The temporary injunction remains in effect until this Court rules and the mandate is issued.

32.     Although the temporary injunction at issue is the subject of this appeal, the TI Order remains effective and enforceable.  Texas Rule of Appellate Procedure 18.6 provides that "[t]he appellate court's judgment on an appeal from an interlocutory order takes effect when the mandate is issued."  The Court has not even received the parties' briefs yet, and the Court certainly has not ruled and issued a mandate.  Accordingly, the trial court's temporary injunction remains in force, and Gehrke is actively violating it while this appeal is pending.

## C. It falls to this Court to preserve the parties' rights and enforce the temporary injunction pending the appeal.

33.     Gehrke's actions violate the still in-force temporary injunction, but they also undermine this Court's power of review. This Court should not tolerate such contempt, and Rule 29 of the Texas Rules of Appellate Procedure was adopted precisely to prevent such tactics to evade the judicial process.

34.     Rule 29.3 provides that during the pendency of an appeal of an interlocutory order, the appellate court "may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal."  TEX. R. APP. P. 29.3. Further, in order for the appellate court to enforce the order being reviewed, it "may

9

refer any enforcement proceeding to the trial court with instructions to: (a) hear evidence and grant appropriate relief; or (b) make findings and recommendations and report them to the appellate court." *Id.* at 29.4.

35.    With the appeal still pending, it is within the purview of the appellate court to preserve the parties' rights and enforce the interlocutory order until the appeal is finally disposed of. To preserve Appellees' rights under the appeal, this Court should: (1) initiate an enforcement proceeding under Rule 29.4; and (2) refer the proceeding to the trial court with instructions to hold a hearing as soon as practicable, whereupon Gehrke may show cause as to why he should not be held in contempt for violating the temporary injunction.

## IV.    **PRAYER**

Merritt Hawkins requests that the Court initiate an enforcement proceeding under Rule 29.4 of the Texas Rules of Appellate Procedure, and refer the proceeding to the trial court with instructions to hold a hearing as soon as practicable, whereupon Gehrke may show cause as to why he should not be held in contempt for violating the temporary injunction.

Dated: November 26, 2018

Respectfully submitted,

By: */s/ John C.C. Sanders, Jr.*
Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@winston.com
John C.C. Sanders Jr.
State Bar No. 24057036
jsanders@winston.com
Hayden L. Duffy
Texas Bar No. 24097975
hduffy@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl St.
9th Floor
Dallas, Texas 75201
Telephone:  (214) 453-6500
Telecopy:   (214) 453-6400

**ATTORNEYS FOR APPELLEE
MERRITT HAWKINS &
ASSOCIATES**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing notice is being served upon the following counsel via the Court's e-filing system on November 26, 2018:

John Barber (Motion for Admission *Pro Hac Vice* Pending)
Elisaveta Dolghih
State Bar Number: 24043355
Jason A. Powers
State Bar Number: 24027745
**LEWIS, BRISBOIS, BISGAARD &SMITH, LLP**
2100 Ross Ave., Suite 2000
Dallas, Texas 75201
Telephone: (214) 722-7108
Facsimile: (214) 722-7111
John.Barber@lewisbrisbois.com
Leiza.Dolghih@lewisbrisbois.com
Jason.Powers@lewisbrisbois.com
**ATTORNEY FOR DEFENDANT**
**RICHARD GEHRKE AND**
**PACIFIC COMPANIES, INC.**

*/s/ John C.C. Sanders, Jr.*
John C.C. Sanders, Jr.

# EXHIBIT 1

| MERRITT HAWKINS & ASSOCIATES, LLC | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 298TH JUDICIAL DISTRICT |
| | § | |
| RICHARD GEHRKE & PACIFIC COMPANIES, INC. | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |
| Defendant. | § | |
| | § | |

## TEMPORARY INJUNCTION

On July 25, 2018 Plaintiff Merritt Hawkins & Associates LLC ("Merritt Hawkins") filed an Amended Original Verified Petition, against Defendant Richard Gehrke ("Gehrke") and Application for Temporary Injunction and Temporary and Permanent Injunctions against Gehrke. On August 30, 2018, Merritt Hawkins filed its Third Amended Verified Petition against Gehrke and Defendant Pacific Companies, Inc. ("Pacific") (collectively, "Defendants") and Application for Temporary Restraining Order and Temporary and Permanent Injunctions against Gehrke. On July 25, 2018, the Court GRANTED the Temporary Restraining Order and ORDERED that Merritt Hawkins submit a bond in the amount of $10,000.00. On August 10, 2018, the Court GRANTED the parties' Agreed Amended Temporary Restraining Order. On August 17, 2018, the court GRANTED the Proposed Order Extending Temporary Restraining Order and ORDERED that Merritt Hawkins submit an additional bond in the amount of $15,000.

On August 16, 2018, September 12, 2018, and September 13, 2018, the Court conducted a hearing, received evidence, and heard argument of counsel on Plaintiff's Application for a Temporary Injunction. The parties appeared in person and were represented by their attorneys of

record. After considering the pleadings, the evidence and the arguments of counsel, the Court holds as follows:

## I. FINDINGS OF FACT/CONCLUSIONS OF LAW

1. The Court finds that Merritt Hawkins was formed in 1987 as a physician recruitment firm with just six employees. Since that time, the company has expanded to become one of the nations' preeminent physician recruiting and placement firms with approximately 120 employees in Dallas County.

2. The Court further finds that Merritt Hawkins developed business plans; customer lists and information; marketing and pricing strategies; information concerning its customers and their needs; opportunities and plans; information concerning key staff; sales plans; development efforts and strategies; and relationships with customers.

3. The Court further finds that Merritt Hawkins has expended significant time, effort, and money to develop and protect information related to its clients, client database, pricing structure, and business and marketing plans; to develop and protect customer relationships and contacts; to develop and protect its goodwill; and to develop its offices and client base.

4. The Court further finds that this information is a valuable asset of Merritt Hawkins and derives independent economic value, actual and potential, from not being generally known to and not being readily ascertainable by other persons who could obtain economic value from this information. If this information were disclosed to a competitor, it would provide a competitive advantage to that competitor or the opportunity to obtain a competitive advantage over Merritt Hawkins.

5.      The Court further finds that Merritt Hawkins has taken reasonable steps to protect its customer lists, trade secrets and proprietary information, including, but not limited to, requiring employees with access to these materials to sign a confidentiality agreement, having policies regarding the use and non-disclosure of confidential information, restricting access to locations where the same is stored, restricting access to confidential information, maintaining a secure computer network, and limiting access to its network on a password-protected basis.

6.      The Court also finds that the proprietary and confidential information described above constitute trade secrets within the meaning of applicable law.

7.      The Court further finds that on or around April 1, 2013, Gehrke began his employment with Merritt Hawkins in Dallas, TX. During and throughout his employment with Merritt Hawkins, Gehrke had access to and knowledge of marketing and business development plans of Merritt Hawkins, pricing and marketing strategies, costs, customer lists, and other internal information used to compete for business. Merritt Hawkins securely protects its business plans, customer lists, sales data, marketing strategies, pricing, costs, and margin information.

8.      The Court further finds that, because Merritt Hawkins needed to provide Gehrke access to such information so that he could properly do his job, Merritt Hawkins, as a condition of employment, required Gehrke to enter into a confidentiality agreement, (the "Confidentiality Agreement") which specifically provides that Gehrke would have access to confidential information. Specifically, the Confidentiality Agreement states:

> Employee understands and acknowledges that, in the course of Employee's employment, Employee will have access to, be entrusted or become acquainted with, and may acquire knowledge of information about the Company and the Company's Affiliates and their respective businesses that is not generally known outside of the Company and the Company's Affiliates (hereinafter referred to as "Confidential Business Information").

Confidentiality Agreement § 1.

9. The court also finds that the Confidentiality Agreement also provides that the protected confidential information is valuable.

> Employee acknowledges and agrees that the Confidential Business Information is a special and unique asset of the Company and derives independent economic value, actual or potential, from not being generally known by the public or by other persons or entities who can obtain economic value from its disclosure. Employee further agrees that the disclosure of any Confidential Business Information to competitors of the Company (or the Company's Affiliates), both during and after Employee's employment or use of any Confidential Business Information for Employee's own benefit would constitute misappropriation of the Confidential Business Information.

Confidentiality Agreement § 2.

10. The Court further finds that the Confidentiality Agreement contains language that describes the categories of confidential information that Merritt Hawkins protects. Specifically, the Confidentiality Agreement defines "Confidential Business Information" as including, but not limited to, the following examples:

> (a) marketing, advertising, public relations and/or promotional strategies, programs, plans and methods; (b) pricing policies, methods and concepts, product and services strategies, training programs, and methods of operation and other business methods; (c) mailing lists and lists of and information relating to current, former and prospective clients and accounts of the Company or the Company's Affiliates; (d) lists of and information relating to healthcare professionals, prospective healthcare professionals and other candidates for placement, including positions held, salaries and benefits received and other personal information concerning and/or provided by healthcare professionals, prospective healthcare professionals and other candidates for placement; (e) the personnel needs of current, former and/or prospective clients and accounts of the Company or the Company's Affiliates; (f) terms of service contracts between the Company (or the Company's Affiliates) and its clients, accounts, vendors and/or suppliers; (g) business plans, expansion plans, management policies and other business policies and strategies; (h) business and sales forecasts, market analyses, costs, sales and revenue reports, budgets, other financial data that relates to the management and operation of the Company (or the Company's Affiliates) and its products and services, and other analyses not publicly disclosed; (i)

the Company's competitors; (j) employment lists, and salary, compensation and other information regarding employees, agents, independent contractors, consultants and representatives of the Company or the Company's Affiliates; (k) internally developed computer programs and software and specialized computer programs; (l) internal procedures, programs, reports and forms of the Company or the Company's Affiliates; and (m) other confidential, trade secret and/or proprietary information that allows the Company to compete successfully.

Confidentiality Agreement § 1.

11.     The Court further finds that Gehrke also agreed not to use such information to compete with Merritt Hawkins. The Confidentiality Agreement provides that:

Employee agrees that this covenant not to compete is reasonable and necessary to protect the Company's legitimate business interests, including, without limitation, the confidential and professional information and trade secrets of the Company, the substantial relationships between the Company and its customers, clients and candidates for placement, and the goodwill of the Company. Employee also agrees that the 18-month duration of this covenant not to compete is reasonable.

Confidentiality Agreement § 5.

12.     The Court finds that Gehrke also agreed not to compete with Merritt Hawkins within a distinct geographic territory. Specifically, Gehrke agreed not to compete by doing the following:

directly or indirectly, whether as an employee, employer, officer, director, operator, agent, independent contractor, consultant, stockholder, partner, owner, investor, advisor, joint venturer or otherwise, (A) within the Restricted Territory (as defined below) perform services of the same, similar or greater nature to those performed by Employee for the Company (collectively, 'Services') for any person, entity or venture that competes with the business of the Company ('Company Competitor'), which business includes without limitation recruiting and providing temporary and permanent healthcare professionals, placements and other staffing services to healthcare facilities and other healthcare organizations, or (B) to the extent Employee's position with the Company entailed responsibility for one or more geographic territories within the United States, to perform any Services for any Company Competitor anywhere in the United States if the Services to be provided to the Company Competitor involve all or a portion of the geographic territories for which Employee had direct or indirect responsibility during the 12 months prior to Employee's termination of employment. For purposes of this covenant, the Restricted Territory is defined as Dallas County

and Tarrant County, Texas, and all counties adjacent to Dallas County and Tarrant County, including the counties of Collin, Denton, Ellis, Hunt, Johnson, Kaufman, and Rockwall.

*See* Confidentiality Agreement § 5.

13. The Court finds that Gehrke also agreed not to solicit Merritt Hawkins employees according to the terms of the Confidentiality Agreement. The Confidentiality Agreement provides that:

> During Employee's employment and for a period of 30 months after the termination of Employee's employment for any reason, Employee shall not, directly or indirectly, himself/herself or through any individual or entity, (i) solicit, hire, retain, engage, induce or attempt to induce away, or aid, assist or abet any other person or entity in soliciting, hiring, retaining, engaging, inducing or attempting to induce away from his or her employment or association with the Company or any Company Affiliate any of their respective then current officers, directors, employees, independent contractors, consultants, agents, or other personnel or representatives of the Company or the Company's Affiliates, or (ii) otherwise disrupt, impair, damage or interfere with any relationship between the Company or any of the Company's Affiliates and any of their respective then current officers, directors, employees, independent contractors, consultants, agents, or other personnel or representatives.

Confidentiality Agreement § 6.

14. The Court further finds that Gehrke agreed not to solicit Merritt Hawkins' customers or clients pursuant to the following provision within the Confidentiality Agreement:

> During Employee's employment with the Company and for a period of 18 months following the termination of Employee's employment with the Company for any reason, Employee agrees not to, either individually or jointly, directly or indirectly, either as an employee, employer, operator, agent, independent contractor, owner, consultant, partner, investor or otherwise, solicit or provide any products or services that compete with the products and services offered by the Company to any actual or prospective client, customer or candidate for placement of the Company and who was serviced, directly or indirectly, by Employee or with whom Employee otherwise dealt, directly or indirectly, including management or supervision of others who serviced or dealt with such client, customer or candidate, during the 12-month period prior to Employee's separation from the Company.

Confidentiality Agreement § 7.

15. The Court finds that the Confidentiality Agreement is supported by and protects legitimate business interests—including, but not limited to, Merritt Hawkins' confidential and/or trade secret information, substantial customer relationships, and interest in maintaining a competent and specialized workforce.

16. The Court finds that certain of the restrictions contained in the Confidentiality Agreement are reasonably necessary for the protection of the business and goodwill developed and owned by Merritt Hawkins, and Merritt Hawkins would sustain great and irreparable loss and damage if Gehrke continues to violate the covenants set forth herein.

17. The Court also finds that after he signed the Confidentiality Agreement, Gehrke gained access to and learned of Merritt Hawkins' confidential business information and other proprietary and trade-secret information, such as its business plans, customer lists, marketing and sales strategies, margins, prices, and costs.

18. The Court finds that Gehrke was an executive in Merritt Hawkins sales and marketing department and, therefore, had direct contacts and developed substantial relationships with Merritt Hawkins' clients and key client contacts. Gehrke was also a vice president, which enabled him to learn about Merritt Hawkins' business development strategies, among other important and confidential information related to Merritt Hawkins' healthcare professional recruiting and placement business.

19. The Court further finds that during the twelve months prior to his termination, Gehrke was worked in and was responsible for the following territories: Missouri, Illinois, Arkansas, Colorado, and southern California (the "Territories").

20. The Court also finds that in fulfilling his duties, Gehrke learned confidential information about Merritt Hawkins' clients, contracts, pricing, and business plans

and strategies in the Territories. Gehrke acquired sensitive information about the costumers that he dealt with directly, as well as the customers of his subordinates.

21. The Court finds that Gehkre has no objection to being restricted from calling on customers in Colorado, Kansas, Nebraska, Oklahoma and southern California.

22. The Court finds that Gehrke's employment with Merritt Hawkins was terminated on May 1, 2018. Before he was terminated, Gehrke sent confidential information to his personal email account. When he exited, Gehrke was reminded of his continuing obligations to Merritt Hawkins and his post-employment restrictive covenants pursuant to the Confidentiality Agreement.

23. The Court finds that beginning on June 18, 2018, Gehrke began working for the Pacific Companies ("Pacific"). Pacific engages in physician recruitment and placement like Merritt Hawkins and is a competitor of Merritt Hawkins.

24. The Court finds that since beginning his employment at Pacific, Gehkre has contacted numerous Merritt Hawkins' customers with whom he previously worked while at Merritt Hawkins, including customers in the Territories. The Court also finds that Gehrke has successfully obtained business for Pacific from clients that Gehrke was contractually prohibited from soliciting. The Court also finds that Gehrke used and disclosed Merritt Hawkins's confidential information in performing his duties on behalf of Pacific. The evidence also demonstrated that Gehrke plans to (1) continue soliciting customers with whom he worked at Merritt Hawkins; (2) continue working in the Territories for a competitor; and (3) continue using and disclosing Merritt Hawkins' confidential information unless enjoined.

25. The Court finds that Gehrke's conduct is in direct violation of the Confidentiality Agreement, in exchange for which Gehrke received employment and promotions, in addition to access to confidential information.

26. The Court further finds that Gehrke acquired trade secret information pursuant to the Confidentiality Agreement and his use and disclosure of the trade secret information was in violation thereof.

27. The Court further finds that Gehrke did not have permission to use or share Merritt Hawkins' trade secrets or confidential information.

28. ■

29. The Court finds that some of the restrictions contained within the Confidentiality Agreement concerning the time, geography, and scope are reasonable and narrowly tailored to protect the consideration underlying the Agreement, which includes the protection of confidential information and trade secrets, highly specialized training, and goodwill.

30. ■

31. ■

32. ■

## II. RELIEF GRANTED

Accordingly, it is hereby **ORDERED** that, Defendant Gehrke and his collective and respective agents, and those persons in active concert or participation with Gehrke, are temporarily enjoined from engaging in the following acts:

1. Until January 24, 2020, soliciting, either directly or in concert with anyone else, any actual or perspective client, customer, or candidate for placement of Merritt Hawkins

with whom Gehrke dealt during the 12 months prior to his separation from Merritt Hawkins; *provided however*, for purposes of the scope of the restrictions in this paragraph, the Court has a customer list it is holding *in camera* and has provided to counsel of record for the parties in this matter which shall define those customers and prospects which are the subject of the prohibitions contained in this paragraph;

2. Until January 24, 2020, directly or indirectly, performing any services of the same, similar, or greater nature to those performed by Gehrke during his employment at Merritt Hawkins for a competitor of Merritt Hawkins in the states of Colorado, Kansas, Nebraska, Oklahoma, and southern California, and within a ten (10) mile radius of the customers and prospects set forth on the customer list referenced in the preceding paragraph.. For purposes of clarity, the services that Gehrke may not perform pursuant to this paragraph include recruiting or providing permanent healthcare placements or staffing services to healthcare facilities or organizations;

3. Until January 24, 2021, soliciting, either directly or in concert with anyone else, any employee of Merritt Hawkins;

4. Using, disclosing, or transferring any of Merritt Hawkins' trade secrets or confidential or proprietary business information, including, but not limited to, prices and costs, margins and suggested margins, business plans, customer lists and information, marketing and pricing strategies, information concerning Merritt Hawkins' customers and their needs, opportunities and plans, information concerning key staff, sales plans, development efforts and strategies, or any other information which is regularly used in the operation of Merritt Hawkins' business;

5. Destroying, concealing, or disposing of any documents, paper, or electronic files, or other materials obtained from or belonging to Merritt Hawkins, or containing Merritt Hawkins' trade secrets or confidential or proprietary business information;

6. Altering, deleting, removing, or writing over in any respect any documents, computer files (including, but not limited to, e-mails, hard drives, disc drives, zip drives), data, drafts or other things relating in any way to Merritt Hawkins, including information regarding Merritt Hawkins' clients, employees, property, or business information, until such time as those materials may be turned over in discovery or until further order of the Court; and

7. Destroying, concealing, or disposing of any documents, paper, electronic files, or other materials relating to Defendant's actual or potential employment by Pacific or any other competitor of Merritt Hawkins.

The Court finds that the bonds previously paid in the amount of $10,000 and $15,000 currently held by the Dallas County District Clerk are sufficient for the issuance of this Temporary Injunction Order.

It is further **ORDERED** that the Clerk shall issue a Writ of Injunction incorporating this Temporary Injunction Order.

SIGNED at 11:35 o'clock Am. on the 25 day of September 2018.

_____
JUDGE PRESIDING

# EXHIBIT 2

| | | |
|---|---|---|
| MERRITT HAWKINS & ASSOCIATES, LLC | §<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | 298th JUDICIAL DISTRICT |
| RICHARD GEHRKE & PACIFIC COMPANIES, INC. | §<br>§<br>§ | |
| Defendants. | §<br>§<br>§<br>§ | DALLAS COUNTY, TEXAS |

## DECLARATION OF TRAVIS SINGLETON

I, Travis Singleton, declare as follows:

1. I am over the age of 21 and fully competent to make this declaration. My date of birth is August 1, 1977, and my address is 8623 Glencrest Ln, Dallas, TX 75209. I have personal knowledge of the facts and statements contained in this declaration and I declare under penalty of perjury that the following is true and correct.

2. I am an Executive Vice President at Merritt Hawkins & Associates, LLC ("Merritt Hawkins").

3. I have a LinkedIn account and while Gehrke was a Merritt Hawkins employee, I became associated with and personally aware of Richard Gehrke's LinkedIn account.

4. Since Gehrke's departure, I have monitored his account and postings on LinkedIn, including his postings about attendance at various medical conferences.

5. In October of 2018, Gehrke posted on his LinkedIn account concerning his attendance at the Missouri Primary Care Association Conference (the "MPCA Conference") in Branson, Missouri, that occurred on October 25-28, 2018.

6. A true and correct copy of Gehrke's post is attached hereto as Exhibit A.

1

7. The MPCA Conference seeks to educate and address topics of interest to patient care providers and their administrators. Vendors, such as medical staffing companies, pay a fee in exchange for the opportunity to operate a booth at the conference to solicit potential customers.

8. Gehrke's LinkedIn post includes a picture of him working as Pacific's representative at the MPCA Conference. In the picture, there is a large sign soliciting conference attendees to utilize Pacific Companies, Inc.'s ("Pacific's") locum tenens and permanent healthcare staffing services.

9. The following customers that Gehrke is specifically enjoined from soliciting attended the MPCA Conference:

- Arthur Center Community Health
- Betty Jean Kerr Peoples Health Centers Inc.
- Clarity Healthcare
- Compass Health Network
- Comtrea
- Cross Trails Medical Center
- Family Health Center
- Fordland Clinic Inc.
- Great Mines Health Center
- Katy Trial Community Health
- Missouri Highlands Health Care
- Missouri Ozarks Community Health
- Ozarks Community Health Center
- Samuel U. Rodgers Health Center
- Your Community Health Center

10. In November 2018, Gehrke posted on his LinkedIn account concerning his attendance at the Missouri Hospital Association's Annual Conference (the "MHA Conference").

11. A true and correct copy of Gehrke's post is attached hereto as Exhibit B.

12. The MHA Conference is a hospital association conference that is held to educate and assist its members and healthcare professionals. Vendors, such as medical staffing companies,

2

pay a fee in exchange for the opportunity to operate a booth at the conference to solicit potential customers.

13.     Gehrke's LinkedIn post includes a picture of him working as Pacific's representative at the MHA Conference. In the picture, there is a large sign soliciting conference attendees to utilize Pacific's locum tenens and permanent healthcare staffing services.

14.     The MHA Conference took place on November 8-9, 2018 at the Tan-Tar-A Resort which is located at 494 Tan Tara Drive, Osage Beach, MO 65065.

15.     The following customers that Gehrke is specifically enjoined from soliciting attended the MPCA Conference:

- BJC Healthcare
- Community Hospital
- Hannibal Regional Healthcare System Inc.
- Lake Regional Health System
- Missouri Delta Medical Center
- Nevada Regional Medical Center
- Northeast Missouri Health Council Inc.
- Ozarks Medical Center
- Perry County Memorial Hospital
- Saint Francis Medical Center
- Salem Memorial District Hospital
- Scotland County Hospital
- Shriners Hospitals for Children
- SSM Health
- St. Mary's Regional Medical Center

16.     The Lake Regional Health System is located at 54 Hospital Drive, Osage Beach, MO 65065 which is within 10 miles of the MHA conference.

17.     In November 2018, Gehrke posted on his LinkedIn account concerning his attendance at the Illinois Staff Physician Recruiters Conference (the "ISPR Conference").

18.     A true and correct copy of Gehrke's post is attached hereto as Exhibit C.

3

19. The ISPR Conference is held for the in-house physician recruiters of its member health systems, hospitals, and physician organizations. Vendors, such as medical staffing companies, pay a fee in exchange for the opportunity to operate a booth at the conference to solicit potential customers.

20. Gehrke's LinkedIn post includes a picture of him working as Pacific's representative at the ISPR Conference. In the picture, there is a large sign soliciting conference attendees to utilize Pacific's locum tenens and permanent healthcare staffing services.

21. The ISPR Conference was held on November 14-16, 2018, at 140 E Walton Pl., Chicago, Illinois, 60611.

22. The following customers that Gehrke is specifically enjoined from soliciting attended the MPCA Conference: Carle Physician Group and Physicians Immediate Care LLC.

23. Derick Dermatology is located at 8501 W Higgins Road, Suite 100, Chicago, IL 60631, which is within 10 miles of the ISPR Conference.

24. Thorek Memorial Hospital is located at 850 W. Irving Park Road Chicago, IL 60613, which is within 10 miles of the ISPR Conference.

25. Physicians Immediate Care ("PIC") has 11 locations in Chicago, IL. One of the PIC locations is located at 600 W. Adams St. Chicago, IL 60661, which is within 10 miles of the ISPR Conference.

26. Eating Recovery Center is located at 150 E Huron St, Chicago, IL 60611, which is within 10 miles of the ISPR Conference.

27. In my position at Merritt Hawkins, I have become familiar with these conferences. The conferences require attendees to network with the vendors that support the conference. For example, these conferences have scheduled times for the attendees to walk among the vendor

4

booths 3-4 times a day, between their meetings. Likewise, the conference organizers plan happy hours and other times that are dedicated to networking between attendees and vendors. At these conferences, it is difficult to avoid certain clients, because they are highly encouraged to speak with every vendor to show appreciation for their sponsorship of the event.

28.     Additionally, these conferences are geographically organized. Therefore, it is easy to know which potential clients are likely to attend each conference. By way of example, the ISPR Conference is for clients based in Illinois, while the MHA Conference is for clients that are located in Missouri. These conferences are regional, not national.

29.     Furthermore, on November 21, 2018, I reviewed a video advertisement, posted by Gehrke on behalf of Pacific, advertising a permanent gastroenterologist opening fifteen minutes outside St. Louis. Such a placement would be within the territory where Gehrke is presently enjoined from conducting competitive activities for permanent position placements.

Executed in Dallas Count, State of Texas, on November 21, 2018.

_____
Travis Singleton

5

# Exhibit A

**Rich Gehrke** • 3rd

Senior Vice President of Business Development at Pacific Companies

3w

MPCA in Branson Missouri! Excited to be here!



21 Likes · 2 Comments

# Exhibit B



**Rich Gehrke** • 3rd

Senior Vice President of Business Development at Pacific Companies

1w

Missouri Hospital Association Annual Conference. Great to be back!



34 Likes · 5 Comments



👍 Like    💬 Comment    ➤ Share

# Exhibit C

## Rich Gehrke • 3rd
Senior Vice President of Business Development at Pacific Companies
3d

ISPR Chicago!



24 Likes

👍 Like    💬 Comment    ➤ Share